## BARTHET *v.* CITY OF NEW ORLEANS.[1]

*(Circuit Court, E. D. Louisiana. July, 1885.)*

1. CONSTITUTIONAL LAW—MONOPOLIES—LOUISIANA CONSTITUTION.
   The Louisiana constitution forbids monopolies; the prohibition cannot be avoided directly or indirectly by state or city laws.
2. SAME—SLAUGHTERING CATTLE IN CITY OF NEW ORLEANS—CITY ORDINANCE.
   The limits within which complainant's lawful business—that of slaughtering cattle—may be carried on having been fixed by the city in pursuance of article 248, state constitution, the city is without power to pass an ordinance requiring her consent to be given complainant before he can proceed with his business at the place selected, and already built upon by him, within the said limits.

1 Reported by Talbot Stillman, Esq., of the Monroe, La., bar.

3. SAME—FOURTEENTH AMENDMENT.

The fourteenth amendment, Const. U. S., forbids any state to make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, and prohibits a state from denying to any person within its jurisdiction the equal protection of the laws. The right assumed by the city in this case, to grant permission to A. to carry on his lawful business, carries with it the right to deny permission to B. to exercise the same privilege. The power to deny permission to A., B., and C. to carry on the slaughtering business at the several locations selected respectively by them within said limits would enable the city to allow the favored suitor to establish a monopoly.

4. SAME—EQUITY JURISDICTION—REMEDY AT LAW.

To forbid the interference of equity in a case like this, it must appear clearly that complainant has a remedy at law which is plain and adequate, and as practical and efficient to the ends of justice and its prompt administration as the remedy sought for in equity.

5. SAME—RIGHT TO INJUNCTION.

The complainant, in the view of the city, has erected costly buildings for the purpose of carrying on his trade, and is now proceeding to carry it on within said limits. He has complied with all the regulations. It would not now be a prompt or efficient administration of justice to allow the city, in the exercise of an unconstitutional ordinance, to stop him, and leave him to sue at law for compensatory damages. The act complained of is not a mere trespass upon property.

6. SAME—SIXTEENTH SECTION OF JUDICIARY ACT.

The sixteenth section of the judiciary act prohibits suits in equity when there is a plain, adequate, and complete remedy at law. This prohibition is merely declaratory on the subject of legal remedy; it does not appear that the adoption of that statute has impaired the jurisdictional powers of the equity courts of the United States for the protection of the property of individuals, or for the protection of the privileges that belong as a common right to all persons to whom the courts are open for the administration of justice.

7. SAME—DEPRIVING CITIZEN OF RIGHT TO EXERCISE LAWFUL TRADE.

In a government like ours it may be said that any act which would deprive a citizen of the power to exercise his lawful trade or privilege must be considered as working an irreparable injury, particularly when the wrong-doer is attempting to do an act clearly forbidden by the state and federal constitutions; and the protection of the writ of injunction should be allowed.

Rule to Show Cause why an Injunction *pendente lite* should not issue.

*A. H. Leonard* and *E. Sabourvin,* for complainant.

*W. H. Rodgers,* for the City.

BOARMAN, J.  Article 258 of the constitution of Louisiana prohibits any monopoly. Article 248 invests the defendant city with power to regulate the slaughtering of cattle, etc., within its limits, provided no monopoly or exclusive privilege exist within the state. Nor shall such business be restricted to the land or houses of any individual or corporation; and provided, further, the place designated for slaughtering is approved by the board of health. By several ordinances, approved by said board, the city designated the place at which the slaughtering of cattle may be carried on, and prescribed in detail the regulations under which such business should be conducted.

The complainant, a citizen of France, whose trade and business is the slaughtering of cattle for food, desiring and intending to engage in such business in New Orleans, leased, with the privilege of buying, two squares of ground situa ed within the limits defined by said ordi-

nances, and proceeded to repair such buildings, and construct on said ground other buildings and improvements suitable for the trade in which he is engaged, investing in said improvements a considerable sum of money. Subsequently, on May 19th, an ordinance was passed by the council which is styled "An ordinance amending ordinance 7,336, as passed September 13, 1881, designating the places for slaughtering animals intended for food under article 248 of the constitution." The original ordinance provided that "it shall be lawful for any person or corporation to keep and maintain slaughter-houses, etc., within certain limits, under certain regulations." The amendment mentioned makes it *unlawful* to keep and maintain slaughter-houses within said limits prescribed in original ordinance, and under said regulations, "*except* permission be granted by the council of the city of New Orleans."

It appears that defendant corporation intends actively to enforce, or attempt to enforce, as against Barthet, the amended ordinance; that it is about to obstruct, hinder, and prevent him from carrying on his legal business in the limits already laid out in pursuance of article 248.

The complainant, alleging that, acting on the good faith of said articles and ordinances, he has acquired vested rights, and that the ordinance of May 19th is unconstitutional, brings a bill for injunction to enjoin and restrain the defendant from interfering in any manner with him in carrying on his business. Complainant prays, on final hearing, for an injunction absolute, and in the mean while has taken this rule to show cause why an injunction *pendente lite* should not issue. Defendant has filed no answer or made any denials, even in argument, of complainant's allegations.

The amendment of May 19th is, we think, unconstitutional, in the fact that if it is carried out, as the city attorney admits it will be, it will make Barthet's right to engage in a lawful business dependent on the arbitrary will of an individual or a body of individuals acting for the city. The city has no governmental or special power to prevent any one, who complies with the law regulating such business, from engaging in any lawful business he prefers.

The fourteenth amendment to the United States constitution forbids any state to make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, and prohibits a state from denying to any person "within its jurisdiction the equal protection of the law." That amendment does not enlarge the rights of persons; it clearly recognizes and emphasizes principles imbedded in the common law, and which underlie the structure of all free governments.

The right to grant permission to A. to carry on his lawful business carries with it necessarily the power to deny permission to B. to exercise the same privilege. The complainant is entitled, in common with all persons, to equal protection. Applying this principle to this case,

as it is made up by the bill and admissions of the city's counsel, Barthet is entitled to carry on his trade within the limits already laid out by the city in pursuance of the articles herein cited. If the city council, as the matter now stands, can prevent him from so doing simply because he has not their permission, then he has not that equal protection of the law guarantied in the constitution. The ordinance of May 19th transcends not only the limitations on legislative authority presented in the constitutions of the federal and state governments, but in our opinion it transcends those limitations, also, which spring from the very nature of free government.

The city council has the right, generally, in the exercise of governmental powers, such as belong to municipal corporations, to regulate the business of slaughtering animals for food; but under the articles 248, 258, state constitution,—responsive as those articles are to a public sentiment long offended in this city by oppressive monopolies in the slaughtering of cattle for food,—it must be apparent that the city cannot, directly nor indirectly, prohibit the business of this complainant under the pretense of exercising an ordinary governmental police power. It is clear that those articles were intended to prohibit all monopolies, and to limit rather than to enlarge the police powers of the city in relation to slaughtering cattle, etc., and if the city can refuse to permit Barthet to carry on his business, it can adopt the same course with others. By giving its permission to an individual or to a corporation, and refusing it to all others, a monopoly could be established by the favored suitor. An ordinance which permits one person to carry on an occupation within municipal limits, and prohibits another who had an equal right from pursuing the same business, is void. So, also, is an ordinance which alleges the rights and privileges conferred by the general law of a state. Cooley, Const. Law, 243, 245–247, 155, 202, 491.

If the amendment of May 19th becomes operative as a law, the investment made by Barthet, on the faith of the law existing when he erected his buildings, will be lost or greatly diminished in value, and his privilege, which is of more value, may be wholly destroyed by the refusal of the city. It is urged in argument that the corporation is a legislative body, endowed with police powers, to be exercised with absolute discretion; that this court has no power to control or limit its action in directing when, and upon what particular lot in the territory laid out and defined by the city, Barthet, or any other person following the same business, may locate and carry on his business of slaughtering animals for food. The proposition of the city attorney, in view of the many cases that have been decided by the state and federal courts, in which just such assumptions of power have been contended for and denied to municipal authorities, need not now be considered, further than to say that the court does not think the proposition maintainable under the law and facts found on the hearing of this bill.

The city does not deny the equity of the bill, nor does she deny that she intends to hinder and prevent Barthet from carrying on his business in the territory laid out; but it is contended that in these proceedings an injunction will not be allowed because the complainant has an adequate remedy at law; that if he is damaged he can recover fully at law. It is true that the sixteenth section of the judiciary act prohibits suits in equity when there is a plain, adequate, and complete remedy at law; but in *Boyce's Exr's* v. *Grundy*, 3 Pet. 210, the court said, referring to that section, that "it is merely declaratory on the subject of legal remedy. It is not enough that there is a remedy at law; it must be plain and adequate; or, in other words, *as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.*" It does not appear that the adoption of the statute mentioned has impaired the jurisdictional powers of the equity courts of the United States for the protection of the property of individuals, or the privileges that belong, as a common right, to all persons to whom the courts are open for the administration of justice. The jurisdictional power of these courts is certainly not less now than it was in England at the time of the adoption of the constitution. The English authorities show that the granting or continuance of an injunction cannot be controlled by any inexorable rule, but that such orders must rest largely in the sound discretion of the court, to be governed in each case by the equitable rights of all parties, as well as by the nature and effect of the relief sought in the particular case. To grant such writs to prevent an irreparable injury is quite common.

The defense of the city is not based upon any denial that she is going to do the thing complained of; but she seems to rely wholly upon some several petitions, signed by several citizens living in the neighborhood of the place where Barthet has begun his business, protesting against allowing him to proceed with his business. These petitions, if they had been seasonably presented to the council, might have caused the particular place occupied by Barthet's buildings to be not included in the limits; but the counsel for the city would hardly be considered serious should he rest the city's defense on the merits of the bill, upon such petitions or papers. An injunction, however, is not, in the federal courts, issued as a matter of course; and it may be well to consider more definitely the matter as to the jurisdictional power of the court to issue the injunction prayed for. The buildings and improvements were erected in the view of the city for the well-known purposes of Barthet's trade. Would it not be inequitable, and violative of a proper, efficient, and practical administration of justice, to allow the city now to stop him in the exercise of his lawful business, in the gratification of his legal rights, and to turn him over to an action at law, against whoever should become instrumental in executing the city's unconstitutional ordinance, for the recovery of damages. If such is the effect of the sixteenth section of the judiciary act, the courts of the United States will find themselves often without

power to afford to suitors a practical and efficient administration of justice.

We do not think the act complained of is an attempt at a mere trespass. The mischief and injury it would work in this case cannot be repaired as efficiently or as adequately by an action at law for damages as in the case of a mere trespass upon property. This is not a case where the city may or will have an ultimate right to do the thing complained of, as sometimes happens when a city is attempting to do a thing lawful to be done, but prematurely; like, for instance, the taking of property for streets before making the compensation required by law; but the city can never do the act complained of without violating Barthet's constitutional rights. In a government like ours it may be said that any act which would deprive a citizen of the power to exercise his lawful trade or privileges must be considered as working an irreparable injury, particularly when the wrong-doer is attempting to do an act clearly forbidden by the state and federal constitutions.

Our opinion will be better understood when we say that the city authorities have no power, legislative, judicial, or administrative, to pass the ordinance complained of; because the power, by whatever name it may be called, delegated to the city in articles 248, 258, as far as Barthet is now concerned, was exhausted when the city officials laid out the limits in which it was declared lawful to slaughter animals for food. The bill shows that an unlawful act is threatened against the privileges of complainant. In our opinion, such an act, if carried out, would not only work an irreparable injury to Barthet, but would be a decided step, whatever may be the motive, causing the council to move in the matter, in the direction of allowing a monopoly in the slaughtering of animals for food in this city.

The injunction will be operative *pendente lite.*