WILLIAM B. WILMOT, Appellee, *vs.* THE CITY OF CHICAGO
*et al.* Appellants.

*Opinion filed December 21, 1927—Rehearing denied Feb. 21, 1928.*

1. CONSTITUTIONAL LAW—*what constitutes due process of law.*
To constitute due process of law, orderly proceedings according to
established rules which do not violate fundamental rights must be
observed, but a general law administered in its legal course accord-
ing to the form of procedure suitable and proper to the nature of
the case, conformable to the fundamental rules of right and af-
fecting all persons alike, is due process of law.

2. MUNICIPAL CORPORATIONS—*the legislature has control over
streets and alleys of city.* As the fee in streets and alleys is vested
in the local municipality in trust for all the citizens of the State
and not merely for local use, the legislature has supreme control
over them unless restrained by constitutional limitation, and it may
through subordinate agencies establish grades for streets and side-
walks and provide for changes in such grades.

3. SAME—*paragraph 7 of section 1 of article 5 of Cities and
Villages act confers power to establish grades of sidewalks.* Un-
der paragraph 7 of section 1 of article 5 of the Cities and Vil-
lages act city councils have power to establish .or alter grades
for sidewalks.

4. SAME—*ordinance requiring consent of city council to alter-
ation in grade of sidewalk is valid.* An ordinance requiring that a
property owner desiring to construct a driveway for ingress and
egress to his property shall not change the grade of the sidewalk
without consent of the city council is a valid exercise of the power
delegated to cities by paragraph 7 of section 1 of article 5 of the
Cities and Villages act and is not discriminative, oppressive or
unjust, nor does it deprive the property owner of his property
without due process of law.

APPEAL from the Superior Court of Cook county; the
Hon. WALTER P. STEFFEN, Judge, presiding.

SAMUEL A. ETTELSON, Corporation Counsel, JAMES W.
BREEN, and STANLEY C. ARMSTRONG, (CORA B. HIRTZEL,
of counsel,) for appellants.

WARREN PEASE, and J. ARTHUR JOHNSON, for appellee.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

Appellee, William B. Wilmot, filed his bill in chancery in the superior court of Cook county for an injunction against appellants, the city of Chicago and Michael Hughes, chief of police of the city of Chicago, in which bill he alleged that he was the owner of certain real estate at the southwest corner of the intersection of Cicero avenue and Monroe street, in Chicago, with a frontage of 55 feet on Cicero avenue and 125 feet on Monroe street, which corner was zoned for business under the zoning laws of Chicago; that the property was vacant and unproductive and that he desired to erect thereon a service station for the selling of gasoline and other petroleum products for automobilists; that he had obtained a permit from the bureau of fire prevention of the city for the installation of the necessary underground gasoline tanks on the premises for the storage of gasoline for sale; that he had obtained a permit from the building department of the city for erection of the necessary building thereon to house the petroleum products and provide office space for properly carrying on the business; that on each of said streets there are concrete sidewalks about six feet in width extending along the line of the property, and between the outer edge of each of these sidewalks and the streets are parkways; that it is necessary to have two driveways on Monroe street and one driveway on Cicero avenue, each sixteen feet in width, to properly provide ingress and egress to and from the property for automobiles; that the driveways cannot be constructed so as to give reasonable service or practicable use as driveways for a service station without depressing or elevating the grade of the sidewalks in the construction of the driveways, for the reason that the parkways so sharply

incline from the outer edge of the sidewalks to the streets that it would be inconvenient and impracticable to construct the driveways by which automobiles can enter and leave the property in a reasonable, practicable and safe manner unless the driveways are constructed on a gradual incline from the street level to the property level, which is somewhat higher than the level of the sidewalks, and that such construction will require slightly changing the grade of the sidewalks by depressing the outside edge thereof and elevating the inside edge thereof in making such incline from the street level up to the property level; that there was purportedly in force in the city of Chicago a certain ordinance known as the driveway ordinance, being sections 3545 to 3572, inclusive, of the Chicago municipal code, of which sections 3565 and 3566 are as follows:

"3565. *Driveways.*) Where driveways are to be built across the sidewalk space, unless otherwise expressly authorized, they shall conform to the sidewalk grade and shall be nine inches in depth, consisting of a layer of concrete seven inches in depth and a top or finishing layer two inches in depth. Work to be in the manner, and materials to be of the quality and proportions, specified for Portland cement concrete walks.

"3566. *Grade of sidewalk—not to be changed for driveways without order of city council—exception.*) No person, firm or corporation shall hereafter construct, build, establish or maintain driveways which depress or elevate the established grade of public sidewalks over, across or upon public sidewalks without first obtaining an order so to do from the city council and a permit so to do, as hereinafter provided. All council orders for driveways shall contain the name of the person, firm or corporation making application and the location and dimensions of the proposed driveway. Council orders providing for driveways over sixteen feet wide shall be referred to the committee of the city council having charge of matters concerning

streets and alleys. Driveways over sidewalk space which do not elevate or depress the regular grade of sidewalks may be established, built, constructed and maintained upon permits issued by the commissioner of public works without council order. Such permits, however, shall contain the conditions required under section 3569, provided that all other requirements of this article shall be fully complied with, except that the commissioner of public works may issue such a permit without requiring a bond as in the case of driveways which depress or elevate the grade."

The bill further alleged that appellee applied to the alderman of the ward in which the property is located and requested him to enter in the city council and have passed a council order permitting the construction of the driveways in question but that the alderman refused to do so; that as the owner of the property he is entitled, as a property right, to ingress and egress therefrom, and is willing to comply with all the requirements of the ordinance as to location, dimensions and specifications and any other reasonable or just requirements for the construction of the driveways, but that the following portion of paragraph 3566 of the ordinance, namely: "No person, firm or corporation shall hereafter construct, build, establish or maintain driveways which depress or elevate the established grade of public sidewalks over, across or upon public sidewalks without first obtaining an order so to do from the city council and a permit so to do, as hereinafter provided. All council orders for driveways shall contain the name of the person, firm or corporation making application and the location and dimensions of the proposed driveway. Council orders providing for driveways over sixteen feet wide shall be referred to the committee of the city council having charge of matters concerning streets and alleys,"—is void for these reasons: First, it is in violation of the constitution of the United States; second, it is in violation of the constitution of the State of Illinois; third, the com-

mon council of the city of Chicago had no right, power or authority to enact the same; fourth, it is unreasonable, oppressive, discriminatory and tends to create monopoly; and fifth, it is uncertain in its terms.

The bill further alleges that appellee made application to the commissioner of public works of the city of Chicago for the installation of the three driveways and offered to give the necessary bond to comply with all the conditions of the driveway ordinance for the location, construction and specifications of the driveway as required by the ordinance and offered to submit to the commissioner his specifications for the driveways, but that he was informed by the commissioner of public works that he could under no circumstances issue a permit for the work without a council order, and such permit was refused; that being advised by his counsel that the provision providing a council order as a prerequisite for such permit was void, he proceeded with the work of constructing his driveways and started excavating the parkway on Cicero avenue for the installation of the driveway connecting his property with the street at that point; that the work was stopped by a police officer of the city of Chicago with the explanation that if the work proceeded appellee's agent who was conducting the work would be immediately arrested; that he is therefore unable to proceed to improve his property and utilize it for said business purposes, and that any attempt to so use his rights in the improvement of his property will be met with resistance by the police department of the city of Chicago and he will be arrested, prosecuted and molested in the prosecution of his rights and that he will suffer irreparable damages. The prayer of the bill is that the city of Chicago, and Michael Hughes, chief of police of the city of Chicago, be required to answer the bill, and that they be enjoined and restrained from in anywise interfering with appellee in the construction of the driveways in question, etc.

Appellants having been served with process of summons, entered their appearance and filed a demurrer to appellee's bill. The demurrer was overruled and appellants were ruled to answer the bill instanter. They elected to stand by the demurrer, and the bill was ordered by the court to be taken *pro confesso* as against both appellants. A decree was thereupon entered in the cause finding that all material allegations of the bill of complaint were true and that the portion of paragraph 3566 of the ordinance in question alleged in the bill to be void was void and decreed that appellants be permanently enjoined from interfering with the construction by the complainant of the driveways in question, provided that the driveways should be located, constructed and maintained in accordance with the requirements of the ordinance except as to that portion which had been held void by the court. Appellants prayed an appeal from this decree, and the court having certified that the validity of a municipal ordinance is involved in the cause and that in the opinion of the court the public interest required that the appeal be taken directly to the Supreme Court, the appeal has been perfected in this court.

Appellee contends that the right of ingress and egress is a right incident to the ownership of property and that the ordinance in this case takes from him that which is his property, in direct violation of section 2 of article 2 of the constitution of Illinois, which provides that "no person shall be deprived of life, liberty or property without due process of law." While to constitute due process of law orderly proceedings according to established rules which do not violate fundamental rights must be observed, a general law administered in its legal course according to the form of procedure suitable and proper to the nature of the case, conformable to the fundamental rules of right and affecting all persons alike, is due process of law. (*Italia America Shipping Corp.* v. *Nelson*, 323 Ill. 427.) Cases

are cited by appellee to the effect that the right of ingress and egress is a property right, of which the property owner cannot be deprived without just compensation. These cases are not in point here, however, as the ordinance in question does not take away from appellee his right of procedure suitable and proper to the nature of the case, conformable to the fundamental rules of right and affecting all persons alike. This is not a suit by a property owner to recover damages for an interference with his right of ingress and egress, but the question here involved is whether or not, when a sidewalk grade has been established, an adjacent property owner can change the same in defiance of the requirements of the city's ordinances providing for such changes. The fee of the streets and alleys is vested in the local municipality in trust for all the citizens of the State and not merely for local use, and the legislature has supreme control over them unless restrained by constitutional limitation. (*Heppes Co.* v. *City of Chicago,* 260 Ill. 506; *People* v. *City of Chicago,* 321 id. 466.) The legislature, in the absence of special constitutional restrictions, by virtue of its plenary power may establish grades for streets and the sidewalks thereon and provide for changes in such grades, and since it acts in the premises through subordinate agencies, it must necessarily have the power to confer upon such agencies power which it possesses in that regard, (*City of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264,) and when such power is exercised by the agencies it is the exercise of the power of the legislature. (*People* v. *City of Chicago, supra.*) The legislature in the exercise of this plenary power, by paragraph 7 of section 1 of article 5 of the Cities and Villages act delegated to city councils in cities the legislative power to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets and sidewalks, and in the exercise of this power a city council may designate portions of the streets to be used for roadways and other portions to be used for

sidewalks, (*Topliff* v. *City of Chicago,* 196 Ill. 215,) establish grades therefor and make reasonable changes in such grades.   *Shrader* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 242 Ill. 227.

It is argued that this ordinance is invalid for the reason that it makes the right to change the grade of sidewalks dependent upon the permission of the city council without prescribing any limitations for the exercise of discretion in granting or refusing such permission.   Cases referred to are:   *Barthet* v. *City of New Orleans,* 24 Fed. 563; *City of Montgomery* v. *West,* 42 So. (Ala.) 1000; *State* v. *Mahner,* 9 So. (La.) 480; *Cicero Lumber Co.* v. *Town of Cicero,* 176 Ill. 9; *City of Sullivan* v. *Cloe,* 277 id. 56.

In *Barthet* v. *City of New Orleans, supra,* section 248 of the Louisiana constitution invests the city with power to regulate the slaughtering of cattle and provides no monopoly shall exist.   Barthet, whose business was slaughtering cattle for food, leased, with privilege of buying, two blocks of ground in the city limits of New Orleans, built the building and repaired those already on the land.   Thereafter the city amended an ordinance designating places for slaughtering animals intended for food under section 248.   The original ordinance declared it lawful to maintain slaughter houses "within certain limits, under certain regulations." Barthet's property was situated within such limits.   The amendment made it unlawful to maintain slaughter houses within the limits prescribed in the original ordinance "except permission be granted by the council of the city of New Orleans."   Barthet filed a bill to enjoin the city from interference with his business, alleging that he had acquired vested rights under the original ordinance.   It was there held that the city having declared Barthet was following a lawful business which was his right and that certain territory could be used for slaughter houses, and Barthet having built thereon, he had a vested right which the city could not take away by requiring permission of the city council for

the continuance of that business; that to hold otherwise would be to offend against the equal protection clause of the fourteenth amendment to the Federal constitution; that when the city council laid out the limits for slaughter houses it exhausted its power to define such limits.

In *City of Montgomery* v. *West, supra,* the ordinance provided that no person should set up or operate a steam engine, planing mill, planing machine, foundry, blacksmith shop, cotton gin, bakery, an establishment for boiling soap, or any similar establishment, within the city without first obtaining the consent of the council. The ordinance was attacked as invalid. It was there held that municipal ordinances placing restrictions upon the lawful use of property must, in order to be valid, specify the rules and conditions to be observed in such conduct or business and must admit to the exercise of the privilege all citizens alike who will comply with such rules and conditions, and such ordinance must not permit the exercise, or the opportunity for the exercise, of any arbitrary discrimination by municipal authorities, between citizens who shall apply for that privilege. In *City of Newton* v. *Belger,* 143 Mass. 598, an ordinance required permission to erect buildings within a certain fire district. It was held invalid for the same reason. The rule has also been recognized that municipal authorities may not, under the police power, substantially prohibit a trade unless it is so conducted as to be injurious or dangerous to the public health. *Town of Greensboro* v. *Ehrenreich,* 80 Ala. 579.

In *State* v. *Mahner, supra,* the ordinance under consideration prescribed the limits within which dairies might be conducted, and it was made unlawful to keep more than two cows without a permit from the city council. It was held that the ordinance did not affect all citizens alike who followed the same lawful occupation but only those who kept more than two cows were subjected to its penalties, and that the discretion vested in the city council was in no-

wise regulated or controlled. The ordinance was defended on the ground that it was for the protection of the public health to prevent dairies in the city, but the opinion aptly points out that such could not be the purpose of the ordinance since it permitted dairies, and that the discretion vested in the council was purely arbitrary and might be exercised in the interest of a favored few, and others at the same time prevented from exercising a lawful occupation.

In *Cicero Lumber Co.* v. *Town of Cicero, supra,* an ordinance regulating the traffic upon boulevards was in question. By that ordinance all persons were forbidden to take any omnibuses or any heavy vehicles or any traffic vehicle upon the boulevards named, except private wagons conveying families, or upon special permission of the board. The ordinance was held unreasonable on the ground that "it prohibits that which is, in itself and as a general thing, perfectly lawful, and leaves the power of permitting or forbidding the use of traffic teams upon the boulevards to an unregulated official discretion, when the whole matter should be regulated by permanent local provisions operating generally and impartially." It was also pointed out that the ordinance in question prescribed no conditions upon which special permission of the board is to be granted.

In *City of Sullivan* v. *Cloe, supra,* an ordinance forbidding any person to enter upon the streets or alleys to erect poles or wires without obtaining the permission of the mayor or members of the street and alley committee, but which did not specify the conditions under which such permission was to be given, was held invalid as an unwarranted delegation of municipal authority to certain municipal officers; that such power rested alone in the city council; that the ordinance should specify the circumstances and conditions on which permission should be granted and prescribe the rules and regulations which are to guide the officers in granting or refusing permission. The same rule was laid down in *People* v. *Sholem,* 294 Ill. 204, where the act con-

328—36

ferring on the fire marshal the power to determine when a building should be destroyed under the State fire regulations, but which did not prescribe the conditions on which such destruction should be ordered, was considered.

It will be noted that the permission sought in these cases was a permission to do a legal act. In *Barthet* v. *City of New Orleans, supra,* the business of slaughtering animals for food was held to be a lawful business. So with the conduct of a blacksmith shop and planing mill in *City of Montgomery* v. *West, supra,* or the conduct of a dairy in *State* v. *Mahner, supra.* In *Cicero Lumber Co.* v. *Town of Cicero, supra,* it is pointed out that the use of the boulevards was a lawful use. These cases are not on all-fours with the facts of this case. By section 1 of article 5 of the Cities and Villages act, city councils are given the power to establish grades for streets and sidewalks. (*People* v. *Clean Street Co.* 225 Ill. 470.) The city council has fixed the grade of the sidewalk in question here. Complainant seeks to change that grade, lawfully fixed by the city council. This he has no right to do. If the sidewalk grade or the street grade, when fixed, injured his right of ingress and egress, he had his action for damages to his lot. This is not such an action. He seeks to prevent interference with his illegal and unauthorized act of destroying a lawfully established sidewalk grade. Were this ordinance held invalid he clearly would not have the right to establish or change the grade of a sidewalk or street. Such right is not given to the citizen or to anyone but the city council.

This ordinance does not grant a privilege or attempt to regulate a right already vested, but rather to provide relief from the operation of an ordinance. No condition can be laid down by an ordinance of this character applicable alike to all places where such change is sought to be made, for the reason that conditions surrounding the property involved are seldom the same. Permission of the character referred to here is, in effect, permission to amend the ordinance.

Complaint is made that it is done by one alderman and not by the city council. This is not the fault of the ordinance but of its enforcement. The ordinance provides that such permission shall be had from the city council, and since such permission is, in effect, an amendment to the ordinance establishing the grade of the sidewalk, it can be secured only by a resolution of the city council passed in such a manner as to operate as an amendment to such ordinance and can not be given by a single alderman. The passage of the driveway ordinance in question was within the scope of the power delegated by the legislature to the city council. To allow a property owner to arrogate to himself the right to change the grade of a sidewalk where it has been established by the city council, in the manner sought to be done by appellee, would put it within the power of the property owner to render the sidewalk dangerous to persons using the same. A driveway constructed as here proposed, sloping from the property line to the curb, with one side of the adjacent sidewalk higher than the driveway and the other side lower, might well be the cause of many accidents in rainy or snowy weather or when the driveway was coated with ice or sleet.

Several cases are cited by appellee to the effect that a city council cannot delegate to an executive officer discretionary authority which is vested by charter or statute in the city. Those authorities, while stating the law with reference to the cases to which they apply, have no application to this case, as the ordinance here in question does not delegate to any executive officer the right to grant a permit to build driveways which will depress or elevate the established grade of public sidewalks over which they are constructed, but expressly provides that such change shall not be made without obtaining an order from the body which is by statute given express authority to alter the grade of the sidewalks. An ordinance permitting the city council to retain the control of the city streets and side-

walks as authorized by the legislature is not discriminatory, oppressive or unjust. *Fisher* v. *City of St. Louis,* 194 U. S. 361.

. The portion of paragraph 3566 of the ordinance in question held void was passed in the valid exercise of the legislative power granted to the city council and is not unconstitutional for any of the reasons urged by appellee. The superior court therefore erred in holding it void, overruling appellants' demurrer and entering its decree, and the decree is therefore reversed.      *Decree reversed.*