(No. 22241.—)
R. G. Lydy, Inc., Appellant, *vs.* The City of Chicago *et al.* Appellees.

*Opinion filed April 21, 1934.*

Edward G. Woods, (Kurt J. Salomon, and Donald L. Vetter, of counsel,) for appellant.

William H. Sexton, Corporation Counsel, (Martin H. Foss, of counsel,) for appellees.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

R. G. Lydy, Inc., appellant, sought by its bill in equity in the superior court of Cook county to enjoin the city of Chicago and certain of its officials, appellees, from interfering with appellant in the conduct of its business. A general demurrer of appellees to the amended bill of complaint was sustained and the amended bill was dismissed for want of equity. This appeal followed, the trial judge having certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court.

No evidence was heard in the lower court, and the rights of the parties must therefore be determined entirely from the pleadings and the law.

The allegations of the amended bill are substantially as follows: Appellant has for a long time been engaged in the city of Chicago in operating public garages, gasoline filling stations and public parking places. Its principal assets are leaseholds, secured for the purpose of its business, and the good will which it has acquired in operating such places. It acquired real estate at two different locations in Chicago for use as public garages, gasoline filling stations and public parking spaces. Subsequently, it obtained written consents from the property owners owning a majority of property, according to frontage, on both sides of the streets on which the properties were located, and the frontage consents were filed with the city. Thereafter the fees were paid and a license to operate a public garage at one location was issued to appellant by the city and licenses to operate filling stations at both locations were also issued. Both before and after the issuance of the licenses appellant expended great sums of money in the erection of buildings and installation of equipment in preparing the premises for operation. It has a leasehold interest in the premises and is required by its leases to pay

large sums of money as rental. It commenced operations in April, 1933, and continued until interfered with by city officials as hereinafter stated. It applied to the commissioner of public works for driveway permits for both premises and offered to tender its bonds. The applications are alleged to have complied in all respects with the city ordinances. The commissioner of public works refused to endorse the application with his approval, without which no permit could be issued by the city council. In order to use the properties as public garages and filling stations it is necessary that appellant build and maintain driveways to provide ingress and egress.

The validity of an ordinance of the city of Chicago (Rev. Chicago Code 1931, sec. 856,) relating to driveway permits is challenged in this proceeding. It is as follows:

"856. *Permit—Council to authorize when.*) No person, firm or corporation shall hereafter construct, build, establish or maintain a driveway over, across or upon a public sidewalk without first obtaining an order so to do from the city council. Such order shall be granted in case of approval of the application for same in the manner herein provided for. The application for such permit shall be made to the commissioner of public works and shall be in the form prescribed in section 857 and be accompanied with plans and specifications and bond as provided for in said section 857, and it shall be the duty of the commissioner of public works to require such other information and details from the applicant as he may deem necessary in order to show the condition of surrounding part of the sidewalk and street in the neighborhood of the proposed driveway. If the commissioner of public works shall be satisfied, after investigation, that the construction and maintenance of the proposed driveway will not unduly obstruct public travel or be dangerous to the public, he shall endorse the application with his approval and forward the same to the city council. In case of such approval the city council may

thereupon pass an order authorizing the construction and maintenance of such driveway upon compliance by the applicant with all the terms and conditions contained in this article: Provided, however, that the city council may withhold its permission and refuse to pass such order if, after a hearing before a committee, it shall appear that the proposed driveway will depress or elevate the established grade of public sidewalks or obstruct a greater portion of the sidewalk than is safe or proper. Any application for a driveway more than sixteen feet wide shall be referred to the committee of the city council having charge of matters concerning streets and alleys before such order is passed by the council. In the case of application for driveways not over sixteen feet in width the permit for the construction of same may be issued by the commissioner of public works and shall be operative pending the passage of the order of the city council."

The amended bill alleges that this ordinance is invalid because unreasonable and discriminatory in so far as it prohibits construction or maintenance of driveways across public sidewalks without first satisfying the commissioner of public works that they will not unduly obstruct public travel or be dangerous to the public; that the ordinance is also invalid because it does not prescribe the conditions under which the driveways may be maintained or constructed but leaves the matter entirely to the whim or caprice of the commissioner, and deprives appellant of its rights under the State and Federal constitutions. The amended bill also alleges that an alderman of the city notified appellant, prior to its acquisition of the premises, that he did not desire to have appellant obtain the leases but wanted the property for a patron of his; that unless appellant secured all leasehold interests in that ward through the real estate firm of which the alderman was a member he would exercise his influence to prevent appellant from securing the necessary sanction for maintenance and oper-

ation of its business at these premises, and that the alderman did not desire appellant to transact any business in his ward and would put it out of business there; that in consequence of appellant's refusal to accept the dictates of the alderman, appellees have erected barriers on and adjacent to the premises and have stationed police officers there who are preventing appellant and its customers from entering or leaving the premises and are destroying the value of the property for the purpose for which it was obtained by appellant; that police officers have arrested one of appellant's employees for moving the barriers so as to permit ingress and egress and are threatening to arrest any person who removes the barriers; that the barriers are erected on the property of appellant and not upon property belonging to the city, and that appellees have threatened to, and will, prevent appellant by force from building and maintaining the proposed driveways. The prayer of the amended bill is that appellees be enjoined from interfering with or molesting appellant or its agents or customers in entering or leaving the premises and from preventing appellant and its employees from building or maintaining the proposed driveways.

Appellant chiefly contends that the driveway ordinance hereinabove set forth is unconstitutional and void because it contains an improper delegation of legislative authority to the commissioner of public works without definite tests to guide him in determining what in each case would "unduly obstruct public travel or be dangerous to the public." It is true that while a legislative body cannot divest itself of its proper function of determining what the law shall be, it may nevertheless authorize others to do those things which it might properly but cannot understandingly or advantageously do itself. (*People* v. *Reynolds,* 5 Gilm. 1; *City of Chicago* v. *Matthies,* 320 Ill. 352; *City of Pekin* v. *Industrial Com.* 341 id. 312.) This doctrine is sound and has been adhered to for many years, for the obvious

reason that government could not be carried on if nothing were left to the judgment and discretion of administrative officers. (*Block* v. *City of Chicago,* 239 Ill. 251; *City of Chicago* v. *Marriotto,* 332 id. 44.) A clear distinction exists, however, between the power to legislate—to grant the permit under certain specified conditions—and the power to administer or regulate its exercise, once granted. The rule is laid down in Sutherland on Statutory Construction, (vol. 1, 2d ed. p. 148,) as follows: "The true distinction is between a delegation of power to make the laws, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made." A review of the decisions of this court shows that in the construction of legislative acts we have repeatedly recognized this distinction.

An ordinance which provided for the installation of sprinkler systems, which did not provide that any certain system should be installed but only that as a safety measure the plan must before installation be approved by the chief of the bureau of fire prevention and public safety was held constitutional in *City of Chicago* v. *Washingtonian Home,* 289 Ill. 206. The exercise of judgment by a factory inspector in the execution of a ministerial power conferred upon him to determine how many and in what positions fire-escapes should be placed on buildings was held not to be an illegal delegation of authority, where the Fire-Escape act of 1897 had provided that all buildings four or more stories in height, and other buildings two or more stories in height, used for certain purposes, should have one or more metallic fire-escapes. (*Arms* v. *Ayer,* 192 Ill. 601.) An ordinance regulating the handling of oils in tank wagons was held not invalid as delegating legislative power to the commissioner of public works by a requirement that each wagon should be equipped with a drip-pan or other device

to prevent spilling of oil on the streets, such devices to be subject to the approval of the commissioner. (*Spiegler* v. *City of Chicago,* 216 Ill. 114.) In this case the distinction was clearly noted by these words: "The power thus conferred upon the commissioner of public works pertains solely to the execution of the ordinance and not to the passage thereof." An ordinance requiring bridge-tenders to be under the supervision of the bridge committee of the council, which should prescribe rules regulating their employment and fixing their hours of work, was held valid, as it sufficiently specified the duties of the bridge-tenders. *City of Pekin* v. *Industrial Com. supra.*

The ordinances or statutes held valid in the above cases were held not to constitute illegal delegations of legislative power, because in each case the duties to be performed or the discretion to be exercised was confined within certain well defined limits. In the present case the question is whether the driveway ordinance placed absolute power in the commissioner of public works to determine whether the construction and maintenance of the proposed driveway will "unduly obstruct public travel or be dangerous to the public." It is to be noted that the ordinance provides for no appeal to the council or any other body in case the decision of the commissioner is against the applicant. The ordinance only provides that if the commissioner is satisfied he shall indorse the application with his approval and forward the same to the city council. No means is created in the ordinance for securing a driveway permit from the city council unless the commissioner has first approved it. No provision is contained in the ordinance by which any applicant can get his application before the council if the commissioner refuses, for personal, political or other motives, to give it his approval. Nor is the commissioner required to state his objections to proposed driveways in order that property owners may know why the application is rejected—whether because it will result in "unduly

obstructing public travel" or "be dangerous to the public," or for both reasons.

Under similar conditions this court has not hesitated to hold in other cases that statutes and ordinances were unconstitutional. Thus, in *People* v. *Sholem,* 294 Ill. 204, a statute provided that when a fire marshal should find any building or structure which "for want of proper repair or by reason of age and dilapidated condition or for any cause" is especially liable to fire, or when such building is "so situated as to endanger other buildings or property or so occupied that fire would endanger persons or property therein," he should order the conditions remedied. In holding that the tests provided in the statute were too indefinite and uncertain and that the statute delegated legislative power to an administrative officer we said: "In the present instance the section in question lays down no rule by which the fire marshal is to determine when a building is especially liable to fire. It may be 'for want of proper repair.' What is proper repair is entirely within the discretion of the fire marshal. It may be 'by reason of age and dilapidated condition.' What shall constitute age and dilapidated condition is wholly within the discretion of the fire marshal. It may be 'or for any cause,' leaving to the fire marshal complete arbitrary power to nominate the cause and determine its effect on any building. From his decision there is no appeal. * * * By this act the fire marshal is given the power arbitrarily to determine, without the intervention or assistance of a court or jury, where the line of demarcation is in any case. By his decision the property rights of individual citizens may be taken away without just compensation or due process of law as required by the constitution."

In *City of Chicago* v. *Matthies, supra,* an ordinance provided in general terms what the construction of various types of buildings was to be and restricted a change from one type to another without a permit from the building

commissioner. Defendant was charged with changing his building to a rooming house and resisted on the ground that the statute was unconstitutional because it left to the determination of the building commissioner the meaning of the term "rooming house." We held the ordinance unconstitutional and among other things said: "The city council, under the powers granted to it by the legislature, has authority to define a rooming house, and before that body imposes restrictions upon the use of a rooming house it is necessary either that the term be so generally understood as to need no definition or the ordinance must define it, otherwise the ordinance is incomplete. An ordinance which leaves to an executive officer the definition of the thing to which such ordinance applies, such definition not being commonly known, is an unwarranted and void delegation of legislative power to an executive officer." Likewise in *People* v. *Beekman & Co.* 347 Ill. 92, a statute requiring persons to furnish bonds before selling securities in Illinois was held unconstitutional because it required that the bonds be "with terms and in form to be approved by the Secretary of State." We there held that "a law vesting discretionary power in an administrative officer without properly defining the terms under which his discretion is to be exercised is void as being an unlawful delegation of legislative power."

In *City of Sullivan* v. *Cloe,* 277 Ill. 56, an ordinance forbidding persons to erect poles or wires upon streets or alleys without obtaining permission of the mayor or members of the street and alley committee, and not specifying the conditions under which such permission was to be given, was held invalid as an unwarranted delegation of authority, since the ordinance did not specify the conditions on which permission would be granted or prescribe rules to guide officers in granting or refusing permission.

In *Kenyon* v. *Moore,* 287 Ill. 233, we held a statute unconstitutional because it delegated to a county superin-

tendent of schools the discretion to determine what is necessary to form "a satisfactory and efficient high school" district. We also held in *Jackson* v. *Blair,* 298 Ill. 605, that a statute conferring power upon the Superintendent of Public Instruction, on appeal, to change boundaries "of all abnormal high school districts * * * to the end that justice shall be done," was unconstitutional, in that it left to the discretion of an executive officer to determine what the law should be and fixed no standards for the application of the act. To the same effect, in *Welton* v. *Hamilton,* 344 Ill. 82, a zoning statute was involved under which an administrative board had been created, with power to act when there were "practical difficulties or unnecessary hardships" in carrying out the strict letter of the ordinance. The statute was held unconstitutional as an improper delegation of legislative authority because it gave no direction and furnished no rule or standard for determining what are "practical difficulties or unnecessary hardships" and left their application to the unguided and unlimited discretion of the board.

In *People* v. *Yonker,* 351 Ill. 139, we held a statute unconstitutional which attempted to vest a city clerk with sole power to grant or refuse licenses to advertise or conduct sales of certain kinds, because the legislature had failed to properly define the objects to which the act applied.

The case of *Wilmot* v. *City of Chicago,* 328 Ill. 552, relied upon by appellees, is clearly distinguishable from this case on the facts. The ordinance there held valid was section 3566 of the Chicago municipal code of 1922, which expressly lodged all power to grant driveway permits in the city council, except those not elevating or depressing the sidewalk grade, which might be "constructed and maintained upon permits issued by the commissioner of public works without council order." No delegation of power to the commissioner was there made in granting or refusing permission for driveways which depressed

or elevated the established sidewalk grade, nor was the commissioner there given power to determine whether the proposed driveways would "unduly obstruct public travel or be dangerous to the public." In the present ordinance it is left entirely to the discretion of the commissioner of public works to determine whether a certain driveway applied for will "unduly obstruct public travel or be dangerous to the public," uncontrolled by any limitations, definitions or standards to govern his action, which, if unfavorable, is not subject to review. This is purely arbitrary. It gives the commissioner absolute power, with or without reason, to withhold approval on any application and thereby damage or destroy valuable property rights. The right of a property owner to access to the public streets adjoining his property is a valuable property right, which cannot be taken away without just compensation. (*Illinois Malleable Iron Co.* v. *Lincoln Park Comrs.* 263 Ill. 446; *Rigney* v. *City of Chicago,* 102 id. 64; *Barnard* v. *City of Chicago,* 270 id. 27.) The purpose of the constitutional provision (art. 2, sec. 2,) is to protect every citizen in his personal and property rights against the arbitrary action of any person or authority. By their demurrer appellees admitted the blockading of appellant's properties after the commissioner of public works had arbitrarily refused to approve the applications for driveways. The city council may exercise a reasonable supervision over the construction and maintenance of driveways across sidewalks, but the ordinance in this case subjects every applicant's rights to the unlimited discretion of an officer, without any rules or provisions of law to govern or control the latter's actions. It is therefore unconstitutional.

The decree of the superior court of Cook county is reversed and the cause is remanded to that court for further proceedings in accordance with this opinion.

*Reversed and remanded.*