THE CITY OF CHICAGO, Plaintiff-Appellant, Cross-Appellee, *v.* TOWN UNDERGROUND THEATRE, INCORPORATED, Defendant-Appellee, Cross-Appellant.

(Nos. 54016, 55076 cons.; ■■■■■■

First District—January 16, 1973.

Richard L. Curry, Corporation Counsel, of Chicago, (William R. Quinlan and Howard C. Goldman, Assistant Corporation Counsel, of counsel,) for appellant.

Charles Liebman, Michael H. Brodkin, and Ben H. Rosenthal, all of Chicago, for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

On April 21, 1969 the City of Chicago filed a complaint seeking a temporary injunction against the operation of the Town Underground Theatre, Inc. [hereinafter referred to as Town]. The court granted the city a temporary injunction on April 29, 1969, after finding that the city has the authority to require a theater to obtain a license. The court also found that Town did not properly file an application for a 1969 license and was in violation of the city ordinance prohibiting operation without a license. On August 1, 1969 the city amended its complaint to allege that the real parties in interest did not apply for the 1969 license and that Town committed a fraud in the license application.

A hearing for a permanent injunction was held, and on January 23, 1970, the court entered a decree which stated that (1) the sole shareholder of the defendant corporation was not the controlling or managing party, but the ordinance and application did not require disclosure of the controlling parties, therefore, non-disclosure could not be a basis for denial of the license; (2) the obscenity conviction of defendant's manager was not final and could not be the basis for denial; (3) the conviction of the assistant manager for a shooting in the theater could be the basis for denial; (4) the licensing ordinances of the city were valid and constitutional; (5) because of defendant's non-disclosure and the failure of plaintiff to provide procedures for processing and investigating applications, there was no evidence of whether the officers and real party in interest were fit persons to hold a license; Town and the party in interest must submit to an investigation by the city, and the city was given 60 days in which to gather information and grant or deny defendant a license to operate.

On March 25, 1970 the court entered a final decree which ordered that (1) the city's complaint was dismissed for want of equity; (2) the decree of January 23, 1970 remained in full force except as therein modified; and (3) the cause was terminated. On March 30, 1970 the city appealed from parts of the judgments of January 23 and March 25 and on April 8, Town filed notice of cross-appeal.

The city's complaint alleged that Town was operating without a license since January 1, 1969 in violation of Ill. Rev. Stat. 1967, ch. 24, par. 11—42—5, and Municipal Code of Chicago, ch. 101, par. 101—1 and ch. 104, pars. 104.1, 104.1—4. The city also alleged that Town's manager was arrested for exhibiting an obscene film on October 14, 1968 and this conviction was the basis of an action before the licensing by authority

of the City of Chicago on January 27, 1969 to revoke Town's license, and in addition, that Town was responsible for the act of one of its agents who fatally shot a person in the theater on April 13, 1969. The city alleged that the continued operation of the theater would be inimical to the health and safety of the public.

Town filed an answer and a counterclaim seeking a declaratory judgment and injunction. Town alleged that the statute and ordinances were unconstitutional and that a license to operate a theater was neither lawful nor necessary, that it was never convicted of obscenity and the conviction of its manager was not final, and that the person involved in the shooting on April 13, 1969 was not its agent.

The evidence revealed that on December 17, 1968 a renewal application was filed for a Public Place of Amusement license for Town, and the required fee was deposited at the City Collector's office. The clerk did not process the application because a "Stop Order" was received from the Mayor's office on December 27, 1968, which indicated that a license revocation proceeding was pending. The clerk sent the application to the police department for investigation. The police department's investigating officer testified that on January 13, 1969 he was in charge of the investigation of Town's application and called Town's attorney to arrange a meeting at which time information would be provided for processing the application. On January 31, 1969 the officer recommended disapproval of the application, since Town had not produced the required information. The information requested was not required by ordinance but was the same information required in liquor license investigations. There were no promulgated police department procedures for theater license investigations, and the information requested included divorce decrees, fingerprints, driver's licenses, social security cards, personal references and inspections of books and records of the corporations. The commanding officer of the license section of the police department testified that an officer was to use "ingenuity" in investigating applicants and an applicant must be "fit." The officer further testified that Town's application was recommended for disapproval because the manager was convicted of exhibiting an obscene film. On February 4, 1969 and March 6, 1969, Town was issued citations for operating without a license.

Another witness testified that he was in the theater at 4:00 A.M. on April 13, 1969 and saw Town's stage manager shoot and fatally injure an off-duty sailor. He testified that he worked at the theater on weekends, was paid by the stage manager, Arndt, and had previously seen Arndt discharge firearms in the theater. The police officer who questioned Arndt at the time of the shooting testified that Arndt told him he was

the stage manager. Town's manager, Voss, testified that Arndt was an independent contractor and not the stage manager. The trial court made a finding that Arndt was assistant manager, but that defendant was not responsible for the independent criminal acts of its agents.

The record also shows that Voss was Secretary of the corporation in addition to manager. However, he could not sign checks, he did not sign the application for a license and he was not shown as Secretary of the corporation on the records of the Secretary of State. It was further shown that Robert Hovey, the sole shareholder and president of the corporation since its incorporation on August 8, 1967, did not have power to sign checks and was paid only $25 per week. He bought Town from Strand Art Theatre owned by Edward Ross, and Ross signed the checks, handled the money and received a salary. Ross also owned the real estate on which Town was built and received a rental fee of $3,000 per month or a percentage of the profits. In addition, Ross visited Chicago every week and could not be fired by Hovey. Ross' interest in Town was not disclosed in the license application. The court found that Ross was the controlling party and could be included in the investigation by the police. Town introduced evidence that the police department was notified of the note and lease between Hovey and Ross when the sale was made and the 1967 license was issued, but was not aware that Ross would be the controlling party.

An Assistant City Collector testified that Town filed an application for a 1970 license, but it was not granted because a 1969 license had not been issued. The Collector's office did not give any instruction regarding the type of investigation which should be made, nor were there any standardized forms for a theater license.

On January 23, 1970 the trial judge found that the controlling issue was whether Town was entitled to a license. However, because Town failed to cooperate in an investigation, and because the city did not have standardized investigating procedures, it was impossible to make a determination of whether the officers, including Ross, were fit and proper persons to hold a theater license. The court then gave the city 60 days in which to require Town, its officers and Edward Ross to submit to investigation by the city. The investigation would include examination of books, records and documents that were necessary for the determination of the fitness and propriety of issuing Town a license. The court also denied relief to Town on its counterclaim. On March 25, 1970 the court dismissed the suit, when the city did not act within the 60 days it had been afforded to conduct its investigation.

The city now appeals and raises these issues for our review: (1) whether the municipal ordinance requiring licenses was a proper exercise

of authority; (2) whether the trial court erred in dismissing the complaint for want of equity, since operating without a license, non-disclosure of Ross' interest, the 1968 conviction of the manager and the conviction of the assistant manager were proper bases for denial of the license. The issues presented by Town on cross-appeal are: (1) whether the operation of Town is protected by the First Amendment thus rendering the statute and ordinances authorizing licenses unconstitutional as prior restraints; (2) whether the ordinance confers absolute discretion in the police and Mayor to deny a license, and whether the standards informally used by the police department were defective; and (3) whether Town is entitled to a declaratory judgment and injunction under its counterclaim.

*OPINION*

The first issue we must consider is the validity of the city ordinances requiring licensing of movie theaters. The city contends that the licensing ordinances are a valid exercise of authority granted by the State. (Ill. Rev. Stat. 1967, ch. 24, par. 11—42—5.) In its cross-appeal, Town argues that the exhibition of motion pictures is protected by the First and Fourteenth Amendments to the United States Constitution, and that a licensing requirement is an unconstitutional prior restraint. The trial court held that the ordinances were constitutional.

■■ It is now an established principle that expression by means of motion pictures is included within the free speech and press guarantees of the First and Fourteenth Amendments. (*Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495; *American Civil Liberties Union v. City of Chicago*, 3 Ill.2d 334, 121 N.E.2d 585), and the fact that the motion picture business is conducted for profit does not diminish its protection. (*Leopold v. Levin*, 45 Ill.2d 434, 259 N.E.2d 250).

■■■ However, a municipality may impose reasonable regulations upon the operation of an economic enterprise, including the business of operating a motion picture theater. (*People v. Steele*, 231 Ill. 340, 83 N.E. 236; *People ex rel. The Cort Theater Co., v. Thompson*, 283 Ill. 87, 119 N.E. 41). Motion picture theaters can be required to obtain licenses pursuant to a city's police power to regulate theaters. (*City of Metropolis v. Gibbons*, 334 Ill. 431, 166 N.E. 115). The fact that First Amendment rights are being exercised on the theater's premises does not deprive the city of the right to require a commercial business to comply with reasonable regulations under police powers. Therefore, the requirement that a license be obtained as a condition of engaging in the motion picture business is a reasonable means of insuring compliance with the police power regulations.

Next we must examine the discretion exercised by the City Collector

to require information from the applicant and by the police department to investigate the character and fitness of any applicant. (Municipal Code of Chicago, 1969, ch. 101, pars. 101—4, 5). The city maintains that it was not arbitrary and that it did not exercise uncontrolled discretion, and that the nature of the information required and the area of investigation must be in the discretion of the named departments in order to achieve the purpose of the investigation. The city further argues that an investigating officer must be unencumbered by standardized procedures, must be unfettered by set rules and must be given wide discretion in his exploration of the applicant. Town contends, however, that the municipal departments have set up no formal procedures to determine if an applicant is qualified. The trial court held that there were no standards to determine what information is needed for investigating applicants, and because of the non-cooperation of both the city and Town, there was no basis on which to determine whether Town was entitled to a license.

The method of regulation must bear a reasonable relation to the purpose of the ordinance. (*Strub v. Village of Deerfield*, 19 Ill.2d 401, 167 N.E.2d 178). Administrative officers may validly exercise discretion to accomplish in detail what is authorized in general terms. (*City of Chicago v. Marriotto*, 332 Ill. 44, 163 N.E. 329; *Biffer v. City of Chicago*, 278 Ill. 562, 116 N.E. 182). It is a well recognized rule that courts are so wary of encroaching in any manner upon the discretionary powers of public officials that, if any reasonable doubt exists as to the question of discretion, they will hesitate to interfere. (*MacGregor v. Miller*, 324 Ill. 113, 154 N.E. 707). However, such discretion cannot be uncontrolled and can only be exercised within limits relevant to the purpose of the ordinance. *Brown v. City of Chicago*, 42 Ill.2d 501, 250 N.E.2d 129.

The ordinances in the instant case state that a license shall be issued if an investigation reveals that the applicant is a proper person to hold the license. The ordinances leave the method and manner of investigation to the discretion of the administrative officers. They must exercise their discretion within well defined limits. *R. G. Lydy, Inc. v. City of Chicago*, 356 Ill. 230, 190 N.E. 273.

The record in this case indicates that an Assistant City Collector testified that: "There is no copy of rules, * * * [w]e do not have policies * * *. In case of an adverse ruling on an application I do not know of any procedure for appeal within the department of the City Collector's office." * Police officers from the License Section testified

* We note that the 1972 amendments to the licensing ordinances require specific information for the investigation, and also provide for notice and hearing in the event the license application is not approved. (Municipal Code of Chicago, 1972, ch. 101, par. 101—5, 27; ch. 104.1, par. 104.1—4).

that no procedures were promulgated by the police department to be implemented in its investigations, the officers were to use their "ingenuity" in investigating applicants and the officers would approve an application if they considered the applicant "fit."

A "Stop Order" based on the obscenity proceedings against Town's manager was received from the Mayor's office on December 27, 1968, prior to the time the application was given to the police for investigation. No notice was given to defendant regarding this "Stop Order." In addition, the other grounds for revocation alleged by the city did not become known to the city until after the license had been disapproved. The city officials processed Town's application in an arbitrary manner. Especially in view of the First Amendment rights involved in the operation of theaters, the measures employed by the city to process the applications were defective.

Therefore the trial court did not err in dismissing the city's complaint when the city did not act within the 60 day period granted by the court. The court did not err in finding that the city could not base its disapproval of defendant's license on the four grounds it alleged.

■■ The trial court also correctly denied Town's counterclaim. We agree that the city could require Town to obtain a license to operate. Town must apply for a license and be subject to investigation by the municipal officials as required under the 1972 licensing ordinances. The fact remains, however, that Town has operated without a license from 1969 through 1972, and license fees for those years must be paid to the City Collector. The city is required to accept the fees for those years.

The decision of the trial court is affirmed with the foregoing modifications.

Affirmed as modified.

McNAMARA and HAYES, JJ., concur.