OF

# THE SUPREME COURT

OF THE

# STATE OF ILLINOIS,

## NOVEMBER TERM, 1851, AT MOUNT VERNON.

THOMAS J. GILLINWATER, Plaintiff in Error, *v.* THE MISSISSIPPI
AND ATLANTIC RAILROAD COMPANY.

### ERROR TO EFFINGHAM.

Companies organized under the law of 1849, providing for a general system of rail-
road incorporations, cannot proceed to condemn lands for the purpose of obtaining
the right of *way*, until after such companies shall have obtained from the legislature
a law approving of the route and terminations of the roads proposed to be con-
structed.

THE Mississippi and Atlantic Railroad Company filed their
petition in the Effingham Circuit Court, asking the appoint-
ment of commissioners for the purpose of securing the right of
way for the use of the company over the land of Gillinwater.
The petition shows that the company had organized under and
in conformity with the provisions of the general law of the 5th
November, 1849, to provide for a general system of railroad in-
corporations. That the line of the road had been surveyed, and
estimates, profiles, &c. made. That the line of survey and
location is made over and upon the land of Gillinwater, and that
this land was necessary for the construction of said road. That
the company and Gillinwater could not agree in relation to said

land, and the company prayed the appointment of commissioners for its appraisement, so as to secure the condemnation of the land.

To this petition Gillinwater appeared and pleaded, that said company have no power granted to them, by the provisions of said act, to hold any real estate for the use, construction, and maintenance of said road, except what they can obtain by gift or purchase; that said act does not confer upon them any power to condemn lands for the purpose of constructing said road, against the will and consent of the owner thereof.

A general demurrer was interposed to this plea, to which there was a joinder; the Court sustained the demurrer, and Gillinwater declining to answer further, commissioners were appointed to ascertain the compensation to be made to the said Gillinwater, for the taking or injuriously affecting the land, &c., by the passage of the said railroad through the same, &c.

Gillinwater brought the cause to the Supreme Court, and assigns for error the sustaining the demurrer to the plea, and the appointment of commissioners, &c.

A. KITCHELL, for plaintiff in error.

W. B. SCATES, C. H. CONSTABLE, J. G. MARSHALL, and E. RUST, for defendants in error.

CATON, J.   The defendant in error is a company, formed under the act of the 5th of November, 1849, providing for a general system of railroad incorporations; and the question is, has it the authority to condemn the right of way, by proceeding under the twenty-second section of that act.   The most ingenious arguments have failed to raise a doubt in our minds that the company does not possess this power.   That section provides, that "any number of persons, not less than thirteen, intending to organize a corporation under the provisions of this act, and every company that may hereafter organize under this act, may present a petition to the legislature, stating the places from, and to which, they propose to construct their road, and its location and route, with reasonable certainty, or that they intend to run the said road on the most direct and eligible route between the points of

termini, and praying the legislature to determine whether the construction of the proposed road will be of sufficient public use to justify the taking of private property for the construction of the same." The section then proceeds to provide, that if the legislature shall decide by law that the road will be of sufficient utility to justify that, then such company, when organized, may proceed in a particular manner therein prescribed, to acquire the right of way, by paying to the owner of the land a just compensation therefor. It was insisted, on the argument, that the provision requiring legislative sanction before the authority to condemn the right of way could be exercised, should be held only to apply to the association of thirteen persons, who had not previously organized into a company, and not to the company of twenty-five persons, who had organized under the first section of the act. The language of the law, however, is so explicit as absolutely to forbid such a construction. It provides that the thirteen or more persons "intending to organize," "and every company that may hereafter organize under this act, may present a petition," &c. Here are embraced, with equal certainty, both classes of associations. Both are allowed to present petitions, and one has no more authority to exercise the right to be conferred by future legislation, than the other. It was insisted, by one of the counsel, that the word *may*, as here used, may be construed to be imperative, only upon the unorganized association of thirteen, while as to the organized company, it is only permissive. But we can find nothing in the language of the law to sustain the suggestion. If the organized company had no occasion for a further grant of power, there could have been no object in allowing them to apply for it. To induce such an application would have been worse than useless, — a trouble to the company, and an idle waste of the time of the legislature. The words, which necessarily point to the organized company, could not have been inserted for so futile a purpose. It is laid down as a rule, that "the word *may* means *must* or *shall*, only in cases where the public interests and rights are concerned, and when the public, or third persons, have a claim *de jure*, that the power should be exercised." Schuyler Co. *v.* Mercer Co. 4 Gilman, 20; Malcom *v.* Rogers, 5 Cowen, 188. Certainly such is its position here. Both the public, and third persons, over

whose land the contemplated road may run, have an interest in compelling the company to apply to the legislature to approve of the road, and find in favor of its public utility, before the power to force the right of way is exercised. It is admitted to be inoperative as to one of its nominatives, and it is equally clear that it is so as to the other. · The statute says that, after a certain other act shall have been passed, the company·may then proceed to take private property for the use of its road; that is equivalent to saying that that right shall not be exercised without such subsequent act. The right to take private property for public use is one of the highest prerogatives of the sovereign power; and here the legislature has, in language not to be mistaken, expressed its intention to reserve that power until it could judge for itself, whether the proposed road would be of sufficient public utility to justify the use of this high prerogative. It did not intend to cast this power away, to be gathered up and used by any who might choose to exercise it.

Some expressions used in the third and fourth divisions of the twenty-first section, were relied upon to show that no further legislation was contemplated, to authorize an organized company to exercise this power. The third division of the twenty-first section authorizes the company to purchase, and take by voluntary grants and donations, and, by its servants, to enter upon all such lands as may be necessary for the road, "but not till the compensation to be made therefor, as agreed upon by the parties, or ascertained as hereinafter prescribed, be paid to the owner or owners thereof, or deposited as hereinafter directed, unless the consent of such owner be given to enter into possession." By the fourth division, the company is authorized, for the purpose of making embankments, &c., to take land "in the manner provided hereinafter," &c. The different provisions of this statute, like those of all others, must be construed together. The general expressions of one section must be restrained or limited by the particular provisions of another, where the manifest intent of the legislature requires it; and such is the case here. The land and right of way are to be acquired in the manner hereinafter provided. That provision is made in the twenty-second section, which authorizes it only to be done after the legislature shall have declared the road to be of sufficient

public utility to justify it. Until this has been done, it is manifest that the powers there specified, like many others provided for in the act, are not to be exercised. They are powers provided for and specified, but not conferred. While in this incipient state, the company is not in an appropriate condition, to exercise many of the powers specified in other parts of the act, and such is emphatically the case as to the one claimed. The legislature, as it would seem, out of abundant caution and to leave no possible doubt that it was its deliberate intention to reserve the right to itself, to judge of the public utility of the road, before authority should be given to take private property for its use, concludes that twenty-second section with the following expressive declaration : " And the legislature hereby reserves the right to itself to indicate the routes and termini of said roads, and the same shall not be constructed or commenced without the express sanction of the legislature of this State, by a law to be passed hereafter." This provision, it was insisted, should only be applied to the unorganized association, for the reason that the organized company would always have had their road surveyed and their route determined upon before making application to the legislature ; but this is no more required of the organized than of the unorganized company. It is true, that the former, in their articles of association, must specify, to a certain extent, the route and termini of their proposed road; but, in their application to the legislature, the same specifications in these respects are required to be made by both. The objection applies to one as much as the other, and we have no doubt, that this concluding clause of the section is equally applicable to each, and that it applies to both.

It was finally insisted that this construction of the law, makes those portions of it, which deprive the company of the power to take private property, unconstitutional, for two reasons : *First,* the company has organized under the law, and has expended a large amount of money in making their survey, maps, and profiles, all of which will be an entire loss, if it is not permitted to make the road, which is, in effect, depriving the company of their property without just compensation. It is only necesary to answer, that all this must have been foreseen when the enterprise was undertaken, and the company formed, in case they

1*

should be unable to get a further grant of necessary powers. They necessarily proceeded with the hazard before them, and must abide the chance. It may be a hard case,—possibly an unjust one, but of this we know nothing, for with it we have nothing to do.

It was further urged, with apparent sincerity, that that portion of the law which withholds the power claimed, is a violation of the constitution, which enjoins it upon the legislature to "encourage internal improvements by passing liberal general laws of incorporation for that purpose." This is a constitutional command to the legislature, as obligatory on it as any other of the provisions of that instrument, but it is one which cannot be enforced by the courts of justice. It addresses itself to the legislature alone; and it is not for us to say, whether it has obeyed the behest in its true spirit. Whether the provisions of this law are liberal, and tend to encourage internal improvements, is matter of opinion, about which men may differ; and as we have no authority to revise legislative action on the subject, it would not become us to express our views in relation to it. The law makes no provision for the construction of canals and turnpike roads, and yet they are as much internal improvements as railroads, and we might as well be asked to extend, what we might consider the liberal provisions of this law to them, because they are embraced in the constitutional provision, as to ask us to disregard such provisions of it as we might consider illiberal. The argument proceeds upon the idea, that we should consider that as done which ought to be done; but that principle has no application here. Like laws upon other subjects within legislative jurisdiction, it is for the courts to say what the law is, not what it should be.

The judgment of the Circuit Court is reversed.

*Judgment reversed.*