(No. 26994.—

SKILLET FORK RIVER OUTLET UNION DRAINAGE DISTRICT *et al.,* Appellants, *vs.* J. T. FOGLE *et al.,* Appellees.

*Opinion filed January 21, 1943.*

KERN, PEARCE & PEARCE, and HEFNER & HARRIS, for appellants.

MILLS, UMFLEET & MILLS, and DOBBINS, DOBBINS & THOMAS, for appellees.

Mr JUSTICE WILSON delivered the opinion of the court:

The plaintiffs, Skillet Fork River Outlet Union Drainage District and Reconstruction Finance Corporation, filed their complaint in the circuit court of Wayne county to

foreclose the lien of an assessment levied for the construction of a drainage system. The unusual state of the record requires a chronological review of the pleadings, remarks of the court from time to time, and such orders as were actually entered.

By the complaint filed April 27, 1940, plaintiffs recited the organization of the drainage district, the listing and assessment for benefits of, and damages to, land owned by the defendants, J. T. Fogle, W. S. Lawrence and Blanche E. Lawrence, under orders and decrees of the county court of Wayne county entered on May 12, 1921, and February 28, 1925; the refunding of the indebtedness by order of the county court; the reduction and recasting of unpaid assessments and interest, and the making and confirmation of a new assessment roll. It is alleged that the Reconstruction Finance Corporation is now the owner and holder of the refunding bonds; that defendants are the owners of real estate upon which foreclosure is sought, and that after the refunding of the debt and the recasting of the assessments, defendants defaulted in payment of the recast assessments. A detailed schedule disclosed the amounts due and unpaid, as of January 1, 1940, for delinquent assessments and interest, and it is charged that the amounts set forth constitute a lien against the various tracts in favor of the district for the use and benefit of the Reconstruction Finance Corporation. The relief sought was an accounting, a decree directing defendants to pay to the district whatever portion or installments of assessments as shall appear to be delinquent, together with interest and costs, and that, in default of payment, the real estate be sold by the county collector or some other officer having authority to receive State and county taxes, and that, in the event of sale and a failure to redeem, pursuant to the applicable statute, defendants and all persons claiming through them be barred and foreclosed of all right and equity of redemption in the property. June 3, 1940, defendants filed a motion to dismiss the complaint and to

strike portions of it on the ground, among others, that, under section 34a of the Levee Act (Ill. Rev. Stat. 1941, chap. 42, par. 33,) and the allegations of the complaint, the requisite conditions precedent for the commencement of this action did not exist, since there was no charge that the alleged delinquent installments and interest had not been "collected on or before the annual sale of lands for non-payment of taxes." No ruling upon this motion appears in the record. July 17, 1940, plaintiffs were granted leave to file an amendment to their complaint, and the amendment was filed on August 10.

November 25, 1940, defendants filed an answer and, also, a counterclaim. By their answer, they averred that the principal reason for their failure and refusal to pay the assessments was because the work ordered to be done in the district for which the assessments were levied was not completed but was, instead, abandoned; that, in consequence, the greater part of the lands in the district, including their property, received no benefit from the limited amount of construction work done in the district, and that, on the contrary, their lands were damaged and the drainage condition impaired by the incomplete work done by the district subsequent to the levying of the assessments. Answering further, defendants averred that the district expended all of the funds collected by it, including more than $350,000 derived from assessments collected and from the sale of its original bond issue, together with approximately $110,000, collected as benefits from an adjoining drainage district, and that, long prior to the refunding of its bond issue and the purchase of the bonds by the Reconstruction Finance Corporation, it abandoned all further work on the improvement and has since been without funds to complete it. Concluding, defendants averred that the failure to complete the work and its abandonment constituted a material and substantial change in the improvement, and that plaintiffs were therefore barred from maintaining this or any other action to collect the assessments.

By their counterclaim to the same effect, defendants sought judgment that they be permitted to establish the facts alleged, to the extent denied by plaintiffs, and that thereupon the latter be barred and enjoined from asserting or attempting to collect the drainage assessments, and that the assessments, and their pretended lien, be held to be barred, and that the record be held for naught as a cloud upon the title of defendants to their property. December 10, 1940, plaintiffs made a motion to strike parts of the answer and to dismiss the counterclaim. March 31, 1941, conformably to leave granted, plaintiffs added an amendment to their motion to strike.

June 16, 1941, the trial judge filed extended "Remarks of Trial Court" in which he stated that the motion of plaintiffs to dismiss the answer and counterclaim of defendants was granted, and that the latter were given thirty days to file an amended answer and counterclaim if they so desired, concluding, "It is ordered that these remarks shall stand as part of the record." No order of any description was entered actually dismissing the answer and counterclaim in accordance with the remarks.

Next, defendants filed an amendment to their answer and counterclaim. The date of filing does not appear. By this amendment, defendants averred that the lands involved were never certified as delinquent by the treasurer of the drainage district to the county collector; that the assessments were never returned for collection as delinquent taxes; that no advertisement giving notice of any intended application for judgment of sale of the property was ever published; that no judgment was taken against the tracts because of the charged delinquency, and that the lands were never offered for sale, sold or forfeited to the State by reason of the nonpayment of the assessments. July 11, 1941, defendants added a second amendment to their answer and counterclaim, averring that section 4 of article IX of our constitution requires that: "The general

assembly shall provide, in all cases where it may be necessary to sell real estate for the nonpayment of taxes or special assessments for state, county, municipal or other purposes, that a return of such unpaid taxes or assessments shall be made to some general officer of the county having authority to receive state and county taxes; and there shall be no sale of said property for any of said taxes or assessments but by said officer, upon the order or judgment of some court of record;" that no return of the unpaid assessments was made to any general officer of the county having authority to receive State and county assessments; that the lands involved were never sold or offered for sale at any annual sale of lands for the nonpayment of taxes pursuant to section 34a of the Levee Act, and that all or the greater portion of the delinquent installments of the assessments accrued prior to the last preceding annual sale but were never returned to the county collector as delinquent. The concluding averments were that, in the event section 34a of the Levee Act be held to not require the return of delinquent assessments or installments of assessments to a general officer of the county having authority to receive State and county assessments, it violated section 4 of article IX of the constitution.

January 5, 1942, plaintiffs moved to strike the major portion of the first amendment of the answer and the entire counterclaim and, also, to strike the entire second amendment of the answer and counterclaim. June 9, 1942, an order was signed by the trial judge permitting an attorney and a law firm to appear and file briefs as *amici curiae*. This order, filed June 17, is the first order appearing in this cause. June 13, 1942, the trial judge again filed "Remarks of the Trial Court," stating that the motion to strike the first and second amendments to the answer and counterclaim was denied, and "It is ordered that these remarks shall stand as part of the record." Supplemental remarks filed the same day are to like effect. June 30,

1942, plaintiffs filed a reply to the answer of defendants, as amended, and to the amendment to the counterclaim, admitting their material averments and allegations.

July 29, 1942, defendants and *amici curiae* made a motion for the entry of a judgment and decree dismissing the complaint for the want of equity. "Remarks of the Trial Court," dated August 31, 1942, were filed September 3. These remarks did ripen into a final order dated August 31, and filed September 3, 1942, dismissing the complaint, as amended, for the want of equity. September 16, 1942, plaintiffs filed their notice of appeal from the decree of August 31. September 25, 1942, defendants filed notice of a cross appeal from the "order and judgment" of the circuit court of Wayne county, "such cross appeal being limited to the action of said court in dismissing the counterclaim of the defendants in said cause. The order of the reviewing court desired in said cause is an order affirming the judgment of the circuit court dismissing the original complaint, but reversing its order dismissing the counterclaim and remanding the cause to the circuit court, with directions to deny the motion to dismiss the counterclaim and to hear and determine said counterclaim upon its merits."

The question of whether there is an order from which defendants can prosecute a cross appeal will receive initial consideration. Defendants contend that plaintiffs' motion to strike the original answer and counterclaim should have been denied. A review of the proceedings from the filing of the complaint to the entry of the order dismissing it for the want of equity affirmatively discloses that only two orders were entered, the first, an order permitting *amici curiae* to intervene and the second, the final judgment order. The latter is entirely favorable to defendants. By their cross appeal, they seek a review of what they assert to be a dismissal of their counterclaim. The frailty of their position is that there is no order to review. It is not

a question of whether an order sought to be reviewed is a final appealable order but is, instead, whether there is any order of any kind or description. Indeed, defendants recognize these facts. In their brief, they say, "We are free to admit that the record of the court's action on the counterclaim is somewhat obscure. * * * No record entry in conformity with the court's remarks appears in the transcript; nor did the court direct the entry of an order dismissing the counterclaim." Doubt is admitted as to "whether there has been any adjudication whatever upon the sufficiency of the counterclaim, or any disposition of it." The basis for the cross appeal rests entirely in the "Remarks of the Trial Court" filed June 16, 1941. We decline either to affirm or reverse the remarks of a trial judge. For the want of an order upon which to predicate an appeal, defendants' cross appeal must be dismissed.

Plaintiffs' appeal presents but one issue requiring consideration, namely, is a delinquent return to the county collector a prerequisite to a foreclosure action under section 34a of the Levee Act? (Ill. Rev. Stat. 1941, chap. 42, par. 33.) So far as relevant, section 34a ordains: "In case the owner or owners of any lands lying in any district, * * * and which are assessed, fails or neglects to pay any assessment or assessments, installment or installments, * * * tax levy or levies when due, and the same be not collected on or before the annual sale of lands for nonpayment of taxes, the commissioners of such drainage district may file a petition or bill in the circuit court of the county * * * for a foreclosure of such lien, and the commissioners may proceed in the corporate name of the district to foreclose such lien, in like manner and with like effect as in foreclosure of mortgages, and such commissioners may include in such foreclosure proceeding any due and unpaid assessment or installment of an assessment or interest on any assessment or installment thereof that may have accrued after the last preceding

annual sale of lands for the nonpayment of taxes and prior to the filing of such petition or bill. * * * The remedy provided in this section for the collection of delinquent assessments or taxes shall not be construed to abridge or in any manner interfere with the right and power to enforce collection of any delinquent assessment or tax in the manner provided by the revenue laws of this State, or other provisions of the act to which this amendment applies, but the remedy herein provided shall be taken and held as an additional means to enforce payment of such delinquent·assessment or tax."

Plaintiffs contend that the only condition which must exist to permit foreclosure under section 34a is that an installment or assessment has not been paid prior to the date of the annual sale of the collector. Section 34a provides that if a landowner neglects to pay an assessment or assessments when due, "and the same be not collected on or before the annual sale of lands for nonpayment of taxes," the commissioners may file a petition or bill in the circuit court for foreclosure of the lien. This provision clearly demonstrates the legislature did not intend that the drainage commissioners should file a foreclosure action prior to the annual sale of lands for nonpayment of taxes. Again, section 34a declares, "and such commissioners may include in such foreclosure proceeding any due and unpaid assessment or installment of an assessment or interest on any assessment or installment thereof that may have accrued after the last preceding annual sale of lands for the nonpayment of taxes and prior to the filing of such petition or bill." The foregoing provision indicates that the amount or extent of the lien sought to be imposed against a tract by virtue of a foreclosure action may include any assessment, installment or interest which has accrued subsequent to the last preceding annual sale of lands for the nonpayment of taxes at which sale the land or lands had been offered and failed to sell.

Plaintiffs rely especially upon the concluding sentence of section 34a: "The remedy provided in this section for the collection of delinquent assessments * * * shall be taken and held as an additional means to enforce payment of such delinquent assessment or tax." They maintain that the quoted portion provides a substitute proceeding for the enforcement of drainage assessments. The insuperable difficulty with this argument is that section 34a provides an additional means for enforcing the payment of drainage assessments—not a substitute plan for collecting drainage assessments. A condition precedent to instituting a foreclosure action is that the delinquent assessments shall not have been collected "on or before the annual sale of lands for nonpayment of taxes." This provision exhibits a legislative intent that there must be recourse to the procedure incident to the annual sale of lands. Otherwise, it is meaningless. We are not warranted in attributing to the General Assembly an intent to place superfluous provisions in the statute. Furthermore, section 34a permits the inclusion in a foreclosure action of due and unpaid assessments which may have accrued after the last preceding annual sale of lands for the nonpayment of taxes and prior to the filing of a petition. This reflects the legislative intent to not permit the inclusion in the foreclosure action of any delinquent assessment unless duly returned delinquent, provided, of course, there should have been an opportunity so to return it.

In *Drainage District* v. *Soucy,* 292 Ill. 584, upon which plaintiffs place reliance, statutory prerequisites had been satisfied. The contention made by plaintiffs here was not, and could not, have been made in the *Soucy case.*

The language of section 34a is plain and remarkably free from ambiguity. A statute itself affords the best means of its exposition, and where, as here, the legislative intent can be ascertained from its provisions, resort to other aids for construction is unnecessary. (*Coon* v. *Doss,* 361

Ill. 515.) From the provisions of section 34a it affirmatively appears that before a foreclosure action will lie the commissioners of the district must certify the delinquent list of assessments or installments to the county collector, as other taxing bodies are required to do with respect to special assessments, and that such delinquent property shall be offered for sale by the county collector, together with other real estate which may be delinquent because of the nonpayment of general and special taxes and special assessments. If the land be bid in at the tax sale, the delinquent assessment will then be received by the drainage district. Such tracts as are not sold and remain delinquent may then be made the subject of a foreclosure action. In short, if land owners, as here, fail to pay their assessments and their property fails to sell at the annual sale of land for the nonpayment of taxes, the commissioners may institute a foreclosure action to subject the lands to an independent sale under section 34a. In order to avail themselves of the additional remedy afforded by section 34a, the statutory command must be obeyed. This, plaintiffs have failed to do.

Our conclusion that plaintiffs have failed to satisfy conditions precedent to maintaining a foreclosure action under section 34a of the Levee Act renders unnecessary a determination of whether the section violates section 4 of article IX of our constitution.

The decree of the circuit court of August 31, 1942, is affirmed, and the cross appeal prosecuted by defendants is dismissed for the want of a final appealable order.

*Decree affirmed; cross appeal dismissed.*

Mr. JUSTICE MURPHY, dissenting.