CATHERINE LAMPE et al., Plaintiffs-Appellants, v. WILLIAM ASCHER, Chief of Police, et al., Defendants-Appellees.

Fourth District   No. 14487

Opinion filed May 11, 1978.

Alfred L. Levinson, of Chicago, for appellants.

Gerald Spinner and Robert M. Rogers, both of Springfield, for appellees.

Illinois Association of Defense Lawyers, of Chicago (Thomas P. Durkin and Steven M. Levin, of counsel), for *amicus curiae.*

Mr. JUSTICE MILLS delivered the opinion of the court:

Can a police department, in its discretion, accept or refuse tendered bail in misdemeanor cases after bond has been set?

In short, no. It *must* be accepted.

We reverse and remand.

On Friday, July 15, 1977, Ms. Lampe and Ms. Gladwell were arrested by officers of the Springfield Police Department and charged with a misdemeanor (soliciting for prostitution). The women's attorney phoned Judge Eugene Duban so that the judge might set bail. Judge Duban called the police station and bond was set for each woman at $1,000. The desk sergeant admits someone came to the station with the requisite money to post bond for the women, but the sergeant refused to accept the tendered money. Thereafter, the women's attorney called the desk sergeant to find out why the money was refused. The answer: "The law says I *may* accept bail. It doesn't say I have to sir." (Emphasis ours.)

The attorney then talked to Lieutenant Lamken. Lamken persisted in

the theory that the sergeant was under no duty to accept bail and said, "If you can get the judge to come down here * * * then she can be bonded out." According to Lamken, the judge would have to accept bail. The lieutenant admitted that the police accepted bail money from other misdemeanor defendants. The attorney continued to press for a reason why the police refused the tendered money, to which Lamken replied, "In this particular case we do not choose to. We may if we choose to accept bail." However, he then stated, "I am not aware of anything—any circumstances. I don't even know about the case."

Connie Young went to the Springfield police station twice on Saturday, July 16, and once on Sunday, July 17; each time the police refused the tendered bail money for the two women. On July 16, about 4 p.m., Linda Britten was arrested by the Springfield Police Department for a misdemeanor (public indecency), yet she was released on bond about 4:45 p.m. the same afternoon.

Lampe and Gladwell filed a suit for injunction and declaratory relief on Monday, July 18, 1977. The legal basis of the complaint was that the Springfield bail practices denied their right to bail. A motion for temporary restraining order was filed and a hearing was held the same day. All of the facts we have cited were adduced as evidence and, in addition, other facts were revealed. Judge Duban testified he had frequently set bail over the phone and had never gone to the jail to set bond, but he was aware of one prior occasion where bail was refused by the police after he had set bond. Judge Duban did not call the police after Lampe and Gladwell's attorney had informed him of the refusal to accept bail; his impression was that they would not have been released even if he called again. In his personal opinion, the practice had some equal protection problems.

James Dickerson, chief of detectives, testified that his interpretation of section 110—9 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 110—9) allowed police officers discretion in accepting or refusing to accept bail from misdemeanor defendants. Dickerson admitted this practice was long-standing and that some criteria involved in the decision to accept or refuse tendered bail included: (1) the defendant's past record, (2) the nature of the offense, and (3) whether the officer feels the person may cause "additional trouble or be involved in the same situation or offense prior to appearing in court." Dickerson also recounted that about three weeks before the July 18 hearing, seven people arrested on a Friday on "similar charges" were detained until Monday court even though the police had received a call from a judge setting bond.

Lampe and Gladwell argued to the trial court that the police have no

discretion to accept or refuse bail once set by a judge or supreme court rule.[1] The policemen argued that the police, under the statute, may refuse to accept bail and require a judge's personal presence and signature before bail is accepted. The trial court was troubled and concerned with the discretion shown by the police officers. However, he felt he had to follow the intent of the legislature and the use of "may" in section 110—9 indicated to him that the police officers were to have some discretion. The trial court denied the women's motion for a temporary restraining order on the sole basis that since the police officers had discretion in accepting or refusing tendered bail, there was no showing of a likelihood of success on the merits. Notice of appeal from the denial of the temporary restraining order was filed the next day. This court also allowed an *amicus* petition.

■■■ The police first argue that the underlying complaint does not state a cause of action since there is no "actual controversy." (Ill. Rev. Stat. 1975, ch. 110, par. 57.1.) Even though this issue was not presented to the court below, the police may raise the complaint's sufficiency in this court. (See *People ex rel. Difanis v. Futia* (1978), 56 Ill. App. 3d 920, 373 N.E.2d 530.) However, we find *Phillips v. Village of Libertyville* (1970), 120 Ill. App. 2d 172, 256 N.E.2d 351, to be persuasive on the issue of actual controversy. The police here claim the statute gives them discretion to accept or refuse bail; the women argue such discretion is unconstitutional. It seems apparent that the police will continue the existing practice. Since the alleged illegal practice occurs on weekends (when local courts normally do not operate) and is of short duration (vis-a-vis any one citizen) it is a problem "capable of repetition, yet evading review." *Ergo*, we hold that this controversy over the police practice based on the statute's interpretation is an "actual controversy" under our statutory provisions for declaratory judgment. *Phillips.*

No argument is raised by the police on Lampe and Gladwell's standing to bring this action nor on the question of whether this is a proper subject for a class action, so we do not comment on those issues.

We now reach the rather narrow issue: Do the Illinois statutes and the supreme court rules give a local law enforcement agency discretion to accept or refuse tendered bail in misdemeanor cases after bond has been set by a judge or supreme court rule? Supreme Court Rule 528 sets bail for misdemeanor offenses; and it is undisputed that bail for the July 15,

---

[1] The supreme court's "NOTE" immediately preceding Supreme Court Rule 526 provides:

"Part B. Bail Schedules

NOTE: The bail provisions of Rules 526, 527 and 528 do not apply to arrests on warrant. Bail is present *to avoid undue delay in freeing certain persons accused of an offense* when, because of the hour or the circumstances, it is not practicable to bring the accused before a judge. When the accused is actually brought before a judge, the bail amounts specified in these rules do not control." (Emphasis added.)

1977, charges filed against Lampe and Gladwell was set by rule at $1,000. Supreme Court Rule 553(a) states that, upon designation by the chief judge of the circuit, certain public employees (including law enforcement officers) are authorized to let bail to misdemeanor defendants such as Lampe and Gladwell; the authorized locations for bail letting are a number of public buildings, including police stations. Section 1 of the Illinois quasi-criminal offenses and misdemeanors bail act (Ill. Rev. Stat. 1975, ch. 16, par. 81) provides for the taking of bail by certain classes of public employees in certain public buildings much the same as in Supreme Court Rule 533(a), and, in addition, the statute provides that bail money received must be delivered to the circuit clerk not later than 48 hours after receipt (unless the accused appears in court sooner). Section 110—9 provides:

> "*When bail has been set* by a judicial officer for a particular offense or offender *any sheriff or other peace officer may take bail* in accordance with the provisions of Section 110—7 or 110—8 of this Code and release the offender to appear in accordance with the conditions of the bail bond, the Notice to Appear or the Summons. The officer shall give a receipt to the offender for the bail so taken and within a reasonable time deposit such bail with the clerk of the court having jurisdiction of the offense." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 38, par. 110—9.

No question of the police department's authorization to accept bail has been raised.

Our ladies here argue that the bail procedures, upheld by the trial court's definition of "may" as connoting discretion, violates the statutory and constitutional rights of every citizen to bail. Under their view, the police officers would be substitute circuit clerks regarding acceptance of bail and would have no discretion to take or refuse bail once set by a judge or supreme court rule. *Amicus* voices concern over the lack of guidelines and the statute's failure to provide for like treatment to similarly situated misdemeanor defendants as a basis for its equal protection argument.

■■ The police argue that a review of the statutes and rules leads to the "inevitable" conclusion that police have discretionary powers to accept bail; to hold otherwise would turn officers into clerks. Alternatively, the police argue that this court adopt a construction of the statute where a written order from a judge is required in order to let a person to bail in misdemeanor situations. The alternative argument is void of merit for it asks this court to find the Illinois Supreme Court powerless to set bail by rule for misdemeanor defendants. This we cannot—nor will not—do.

At this juncture, mention of three cardinal principles of statutory construction is imperative: (1) Ascertain legislative intent, (2) give unambiguous words their plain meaning, and (3) do not choose a

construction of a statute which renders the statute unconstitutional if the statute is susceptible of constitutional construction. The case of *City of Chicago v. Groffman* (1976), 42 Ill. App. 3d 139, 354 N.E.2d 572, *rev'd & rem. on other grounds* (1977), 68 Ill. 2d 112, 368 N.E.2d 891, is a good example of use of the above principles of construction in an analogous situation. Cindy Groffman was prosecuted under an ordinance requiring a city license in order to operate certain types of places of amusement. Once the application was properly filed, "the mayor *may* authorize the issuance of said license." (Emphasis ours.) A Federal court of appeals had held the language involved to be invalid since the provision conferred impermissibly broad discretion on the mayor. The First District Appellate Court gave due deference to the Federal opinion, but then determined, on the basis of long-standing Illinois law, that the word "may" can be interpreted to be either permissive or mandatory. The court continued:

> "[I]t appears that the mere use of the words 'may' or 'shall' do not in and of themselves determine whether the legislative intent is mandatory or permissive. The intent must be determined not simply and automatically from the words themselves but from all of the circumstances before the court including the presence of a public interest which is deserving of protection." (*Groffman*, 42 Ill. App. 3d 139, 146, 354 N.E.2d 572.)

In *Groffman*, the court construed "may" to mean "shall" so that the ordinance vested no discretion in the mayor's actions.

And this is not particularly shocking since perfection in draftsmanship—as in all of man's endeavors—is unattainable. Mr. Justice Holmes once wrote in a law review article that "A word generally has several meanings, even in the dictionary. You have to consider the sentence in which it stands to decide which of those meanings it bears in the particular case, and very likely will see that it there has a shade of significance more refined than any given in the word-book." Holmes, *Theory of Legal Interpretation, 12 Harv. L. Rev. 417 (1899).*

■■■ We find that the statutes and supreme court rules applicable to bail for misdemeanor offenses reveal a scheme mandating prompt, efficient pretrial release from custody. Indeed, as the supreme court's caveat immediately preceding Rule 526 clearly tells us, the purpose sought is "*to avoid undue delay in freeing certain persons accused of an offense.*" (Footnote 1, this opinion.) The public's interest in the smooth operation of the misdemeanor bail system far outweighs the police department's interest in an accused's continued detention once booking procedures are completed, bail has been set by a judge or supreme court rule, and bail money is tendered. We—like the court in *Groffman*—find the word "may" in section 110—9 to be ambiguous. Further, we hold that the proper definition of "may" in section 110—9 is "shall"; there is a

*mandatory* duty on a police department to accept tendered bail (set either by a judge or a supreme court rule) from misdemeanor defendants. In this regard, the police department acts on behalf and in place of the circuit clerk. (See Ill. Rev. Stat. 1975, ch. 16, par. 81.) To construe the word "may" as permissive would be to render the statute unconstitutional as a violation of equal protection due to the unbridled discretion given the police to arbitrarily detain a citizen accused of a misdemeanor. The worst kind of capricious "discretion" is in the record of this case: Two women charged with a misdemeanor (solicitation) are refused bail four times over a weekend (after the amount was set by a judge), while, on the same weekend, another woman charged with a misdemeanor (public indecency) is freed on bail (set by supreme court rule). Lamken admitted he refused Lampe and Gladwell bail even though he knew *nothing* of the particular facts of their situation.

The entire purpose of bail is to insure the defendant's presence in court—it is not to be abused by employing it as a tool for punishment or presentence incarceration. Faced with a strong public interest in the constitutional operation of the misdemeanor bail system, we are compelled to choose the mandatory definition of "may" in section 110—9. *Groffman.*

Footnote. The fact that Lampe and Gladwell later entered into a plea agreement where the illegal weekend detainment became "time served" does not affect this disposition.

Since the trial court denied the motion for temporary injunction solely on the basis of what we today find to be an erroneous interpretation of section 110—9 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 110—9), we remand this cause to the trial court for further proceedings on the motion for temporary restraining order.

Reversed and remanded.

REARDON, P. J., and TRAPP, J., concur.